Case number 22-1139 et al. Concerned Household Electricity Consumer's Council et al. Petitioners versus Environmental Protection Agency. Mr. McDougall for the petitioners. Mr. Link for the respondent. Mr. McDougall. Good morning. Good morning. May it please the court. I'm Harry McDougall representing the petitioners with me is my co-counsel Francis Minton of New York. We petitioned the EPA for rulemaking with respect to the 2009 endangerment finding. And with our petitions and supporting material, we demonstrated that the 2009 endangerment finding is based on a House of Cards. Could you start with standing? Yes, your honor. So, there are two elements. As petitioners for rulemaking, we're entitled under MAS versus EPA to file the appeal. With respect to injury, in fact, our injury is the endangerment finding drives, legally requires greenhouse gas regulation comprehensively, not just the electric power sector. And that drives up electricity prices. So, the endangerment finding talks about the contribution of new motor vehicles and new motor vehicle engines to greenhouse gas air pollution. How is that related to your asserted harm about electricity in your home? Because the 2009 endangerment finding touches off a regulatory cascade or tsunami that drives regulation throughout the Clean Air Act, with the exception of the areas carved out by the UR decision. Other endangerment findings under other parts of the Clean Air Act rest and incorporate the 2009 greenhouse gas endangerment finding. And the position of the EPA is that they are obligated to regulate greenhouse gases due to these endangerment findings, including in every such rule a reference to the 2009 endangerment finding. Could you point us to one such regulation you cited in the blue brief? We did not cite a particular regulation in the brief, your honor. The legal obligation of the EPA to regulate greenhouse gas emissions as a result of the endangerment finding is undisputed. The evolution of the rules that carry out that obligation has been in fits and starts since 2009. I mean, what you're saying makes intuitive sense to me at 200,000-foot level of generality. But, I mean, I don't know how the endangerment finding compels the tailpipe rule, which compels Lord knows what else. That's your job to spell out. Okay. So, for example, the new source performance standard, the methane rule, is predicated on the 2009 endangerment finding in part. And I know that these rules are no longer in play, but the Clean Power Plan also was predicated on the 2009 endangerment finding. The ACE rule was predicated on the 2009 endangerment finding. The new source performance standard for electric power units from 2015 was predicated on the endangerment finding. The 2016 aircraft rule under Section 231 was predicated in part on the 2009 endangerment finding. And the court has ruled in American Lung Association versus EPA that EPA is obliged to regulate greenhouse gas emissions from the power sector. But the regulations are not – that drive electricity prices are not limited to the power sector. EPA also comprehensively seeks to regulate the fossil fuel industry at every point of regulatory contact from exploration, extraction, transportation, refining, and consumption. And this constrains the supply and drives up the price of everything that uses that energy, including electricity. Most of the electricity in the United States is generated from fossil fuels. So, the effect is manifested through the entire scope of regulation that ultimately rests on the 2009 endangerment finding. So, weren't you required to submit an affidavit to provide evidence to support your standing? I don't see such an affidavit. I don't, Your Honor, I don't believe there's a categorical requirement for an affidavit. We need to demonstrate a plausible, a reasonable basis for the injury that we claim. I believe there's authority of this court that says you can't do that in a brief. There has to be evidence. In our original petition that we filed more than six years ago, we have an entire section on standing where we articulate our argument about why greenhouse gas regulation drives higher electricity prices. Is that evidence or just argument? Pardon me? It has to be evidence. There are categories of cases where evidence is required and there are categories of cases where the allegations and the record and the legal requirements on the regulating entity are sufficient to demonstrate. Can you tell me what authority says that? That it doesn't have to be evidence? Well, the Spokio and Laidlaw discuss that the quantum of proof varies according to the procedural posture of the case. But if we need a quantum of proof, that implies evidence. We have supplied the court with real world evidence that every jurisdiction that has tried to regulate greenhouse gas emissions from the electric power sector has experienced significant price increases, particularly when they move to renewable energy. So we have real examples. California, UK, Germany, and elsewhere, they're experiencing when California prices are three times what they are in the rest of the country because of their commitment to replace fossil fuel power generation with renewable sources. And the reason that that's so is that it requires a much higher capital investment by the utility to overcome intermittency and low capacity factor. I mean, I just want to finish this thought, which is what is the authority that says that you don't have to file an affidavit, that you can just rely on things that you state in your brief? The rule says the petitioner may file affidavits. It doesn't say the petitioner must file. Well, it's your burden to show standing. So you may, but if you don't, you might not meet your burden. That's the risk. I agree, Your Honor. And we believe that the combination of the legal compulsion to regulate greenhouse gases comprehensively, combined with the real world examples that we provided, where power prices go up significantly when such a program is undertaken, suffice to carry that burden. The usual case where you don't file an affidavit is where the party before the court is the regulated entity. It's the object of the regulation. But the Supreme Court has said that standing is substantially more difficult when the theory of causation depends on the actions of third parties not before the court, which is this case. That's right. I mean, you all are consumers of electricity, not the power generator. Right. But I mean, we can take notice that EPA's position is they must regulate greenhouse gas emissions comprehensively everywhere that they're able to do so under the law, that they are obligated to do so. And the current posture we're in with respect to rulemaking is that a new replacement for the Clean Power Plan and ACE rule is forthcoming this spring. EPA's position is not that they're not going to regulate. They are going to regulate. They propose a rule Wednesday this week to require two-thirds of new cars to be electric by 2032. And if that happens, that increased demand for electricity will naturally cause prices to increase. So we're in an environment where the government is not saying they're not going to regulate. They're obligated to regulate. We don't know the exact form that that's going to take, but it's impossible to know. But it's plausible. It's substantially plausible to expect that what happened everywhere else in the world, this has been tried, will happen here as well. Now, on the merits, I'm down to 35 seconds, Your Honor. So would you like me to address the merits? Would you like me to sit down? Well, why don't you sit down and we'll give you a couple of minutes to read? Okay, thank you. Well, at that point, I'd like to address the merits. I don't want to be foreclosed in doing so for not having brought it up now. Okay, thank you. Understood. Mr. Link. Good morning, Your Honors. I'm going to lower the... Good morning. My name is Brian Link from the Department of Justice, and I present argument on EPA's behalf. With me at table is Melina Williams from EPA's Office of General Counsel. Petitions for review of EPA's denial of reconsideration of its 2009 endangerment finding should be dismissed for lack of standard, because petitioners have not shown any concrete and particularized injury in fact traceable to a relevant EPA action as they were required to do in their opening. I'd like to just briefly touch on the types of standing, the types of injury they're relying, but I also want to answer a question you posed earlier. Is it okay to simply make the assertions in the brief? In most cases, no. It is true that the court's rules say where standing is not self-evident, but the parties are required to present affidavits or other evidence. But this is an action brought by parties that aren't actually subject to any of these rules. And of course, the endangerment finding and this denial are not actions that actually impose emissions limitations themselves. So this is not the rare case where, for example, EPA promulgates an emission limitation. It regulates sources. Someone in that category says this rule imposes compliance costs on us. We have economic harm. We have standing to sue. That would be the type of case where maybe it's self-evident. That is not the case. So looking for example, it's a, it's, it is a case where the chain of causation runs through actions of third parties, which is a strong point in your favor. Absolutely. But isn't it fair to say that as a result of the endangerment finding over the last 15 or so years, it's been very massive and very pervasive set of regulations passed, imposed on all, on cars, on power plants, on fossil fuels. Do we need to blind ourselves to that general point? There have, in the 13 years since the finding was first issued, been rules promulgated. Some took effect. Some obviously never took effect due to litigation. But if anything, I think the fact that we have that much time to look back on makes it even more problematic that the petitioners didn't present evidence. I mean, it would stand to reason that they could have looked at any of these rules that they have talked about today and actually provided an affidavit or some other direct evidence that shows that this hypothesis they're making about how they will indirectly suffer economically actually happened. That EPA passed a rule and that it did lead to increased electric bills, for example, for checks members. We don't have that. In the CEI case, which was also brought by petitioners not subject to the order they were challenging, they actually came forward with evidence of the higher internet service rates they complained of and an affidavit that explained how that order likely caused that increase. So it's not impossible at all to meet this burden where the facts support the assertion that these petitioners did not. Have you looked at this affidavit in CEI? I have. I have. It's not the most overwhelming. But I would say there was an increase in prices. There was an economic theory that costs are passed on. And there was honestly sort of a pro forma affidavit that said, yes, costs are passed on. So we're missing that. Fair point, Your Honor. But even just having provided evidence, direct evidence, of the increased bills and that it happened shortly after the order is a far stretch better than what we have here. For example, just citing an article that says electricity rates went up in California last year. I could send you a source just as easily, in fact I have it, Dallas Morning News, that says electricity rates went up in Texas last year. I don't think anybody would assume that's because the state of Texas adopted a plan to decarbonize its economy. And in fact, the source attributes it to higher fossil fuel prices, natural gas. So this is a problem with relying on speculation as the basis for standing instead of actually introducing concrete evidence. I'd like to talk a little bit about informational injury. The Electronic Privacy Information Center case says that to establish that basis for standing, you have to show denial of access to or deprivation of information that a statute required the government or a third party to disclose to the petitioner. And evidence that the petitioner suffered the type of harm that Congress was seeking to prevent when imposed that requirement. We don't have here any explanation in the reply where they first mentioned the statute about what creates the actionable right. At least one court, Fourth Circuit, Salt Institute v. Levitt, 440 F. 3rd at 159, has held squarely that it does not create a third party actionable right to access information or correctness of information. And this court in Mississippi v. EPA, 744 F. 3rd at 1346, considered a claim where a petitioner was making similar arguments about the Information Quality Act to oppose EPA's revision of air quality standard. And it said basically what they were really just saying is that EPA's interpretation of data was wrong and that a different scientist's interpretation was right. That's not a compliance issue. It's actually a compliance issue when it comes to information. Same is true here. When you look at their brief, pages 33 to 35, all they're really saying about informational injury is that EPA, in their view, didn't have enough temperature data to support its findings. And they say that the data was adjusted by third parties in an improper way. But they didn't just dispute our response that said all of those adjustments were publicly disclosed. They were transparently disclosed in peer-reviewed literature. They were right there for the petitioners to look at. So this isn't a case of denial of information, deprivation of information. It's just a scientific argument that EPA was making. Briefly touching back on their organizational standing over other concerns about fossil fuel availability. I mean, the things that they articulate in their brief are the classic statement of advocacy. And the court has held many times that just having an advocacy interest is not enough to create Article III standing. You have to show some concrete injury to the individual or to the organization. And if it's an organization, you have to show that the organization used its resources to counteract that harm itself, other than just advocating. They haven't shown that in this. Unless the court has further questions about the merits, we're prepared to rest on our feet. Why don't you just briefly address the merits? Absolutely. EPA, in this denial, provided 40 pages of careful analysis to explain why it found no merit in the objections to its 2009 finding that increased greenhouse gas concentrations in the welfare of future generations. It explained why the complaints about inadequacy or invalidity of data were unfounded. It identified problems and deficiencies in the studies that the petitioners submitted that made those studies unpersuasive. And it also corrected petitioners' arguments about what they had called the tropical hotspot and explained that they had misunderstood EPA's reason to go back and reopen what EPA found in 2009, particularly when considered in light of all of the additional scientific assessments that have been done for the past 13 years. Those assessments have made EPA's conclusions, if anything, more certain, not less than they were in 2009. EPA rationally determined that there was no reason to go back and reopen that effort. All right. Thank you. Thank you, Your Honor. Mr. Verdugo, you have two minutes. Thank you, Your Honor. On the merits, the first point I'd like to discuss is what we're calling the tropical hotspot, which is a distinctive pattern of warming in the global tropical troposphere that is a key element of the theoretical understanding of climate and is predicted by all models. The charts that are in our opening brief at pages 22 and 23 show how it is modeled to occur. And the red blob you see in the middle there is what is at the biggest part of the globe around the equator. And it is essential to the physical understanding. Observations show that that predicted phenomenon does not exist. The key to science is comparing the predictions of your model to observations. And as Richard Feynman memorably explained, if the observations do not match the predictions of your model or your theory, the theory is wrong and that's all there is to it. That is a fundamental requirement of rational decision making on scientific questions. And the evidence that's presented with our petitions shows a fundamental mismatch between model predictions, theory predictions, and observations. And there's only one conclusion to draw from that, which is that models are for climate policy, particularly ones as radical as those that are on the table now that would transform the entire civilization. Thank you very much. Thank you.
judges: Henderson, Katsas, Pan